**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@toddflaw.com
Adrian R. Bacon, Esq. (SBN 280332)
abacon@toddflaw.com
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Telephone: (323) 306-4234
*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LACCINOLE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SILVERLAKE FINANCIAL LLC,<br><br>Defendant. | Case:<br><br>**CLASS ACTION COMPLAINT**<br><br>ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF<br><br><br><br>JURY TRIAL DEMANDED |

## **CLASS ACTION COMPLAINT**

Plaintiff, Christopher Laccinole ("Plaintiff"), by counsel, hereby files his Class Action Complaint against Defendant Silverlake Financial LLC ("Defendant"), and states as follows:

- 1 -
CLASS ACTION COMPLAINT

**INTRODUCTION**

1. This is an action for statutory damages, punitive damages, attorneys' fees, and costs, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"). Unfortunately, as set forth below, this is the second time Defendant's violation of the FCRA has forced Plaintiff to file a lawsuit against it.

2. Plaintiff is an individual and resides in Texas. The three national consumer reporting agencies – Equifax, Trans Union, and Experian ("CRAs") – all maintain credit files and issue consumer reports concerning Plaintiff. The information contained in Plaintiff's credit files and consumer reports is private.

3. Plaintiff is a "consumer" and Defendant is a "person" as those terms are defined, or otherwise used, by the FCRA. Defendant is a "user" of consumer reports as that term is used in the FCRA.

4. As set forth below, Defendant requested and obtained Plaintiff's consumer report, and, upon information and belief, the consumer reports of other consumers similarly situated ("Class" as defined in Paragraph 30 below), from one or more of the CRAs, including Trans Union LLC ("Trans Union"), without a permissible purpose under the FCRA (the "Impermissible Inquiry" or "Impermissible Inquiries").

5. Upon information and belief, Defendant requests and obtains such consumer reports for the purposes of marketing debt relief services directly or through others.

6. As a result of Defendant's wrongful access to Plaintiff's consumer report, and those of the Class, as described herein, Plaintiff, and the Class, have suffered an invasion of privacy.

7. Plaintiff, and the Class, suffered concrete harm as a result of Defendant's violations of the FCRA.

## PARTIES, JURISDICTION, AND VENUE

8. This is a class action brought under Fed. R. Civ. P. 23(a), (b)(1), (b)(3) and (c)(4).

9. At all times material to this action, Plaintiff was a resident of Texas.

10. At all times material to this action, Defendant was a California limited liability company with its with its principal place of business located at 930 W. 17th Street, Santa Ana, CA 92706.  Defendant does business in this District.

11. Defendant may be served with a copy of this Complaint and accompanying Summons by serving its registered agent, to wit: David Potalivo, 4835 River Ave., Unit B, Newport Beach, CA 92663.

12. The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p), and 28 U.S.C. § 1331.

13. Venue lies properly in this District and Division pursuant to 28 U.S.C. § 1391(b)(2).

14. Defendant is subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

15. Plaintiff lives in Texas.

16. Plaintiff filed a prior lawsuit against Defendant, to wit: *Laccinole v. Silverlake Financial, LLC,* Case No. 8:25-cv-00496-FWS-DFM (C.D. Cal.) ("First Lawsuit").  In the First Lawsuit, Plaintiff alleged that Defendant pulled his credit reports from Trans Union or about May 30, 2023, September 4, 2023, March 19, 2024 and June 24, 2024.  (First Lawsuit, ECF Doc. 1).  The parties filed a Notice of Settlement in the First Lawsuit.  (*Id.*, ECF Doc. 35).  The First Lawsuit was dismissed on September 18, 2025.  (*Id.*, ECF Doc. 38.)

17. After the dismissal of the First Lawsuit, Defendant again requested and obtained Plaintiff's consumer reports from Trans Union on or about October 27, 2025 and November 18, 2025.  Attached hereto as **Exhibit A** is the relevant section of Plaintiff's Trans Union credit file showing these inquiries by Defendant.

18. Defendant requested and obtained Plaintiff's consumer report for a so-called "promotional" offer of credit.

19. Upon information and belief, Defendant obtained consumer reports on the other members of the Class.

20. In the alternative, Defendant obtained one or more prescreened lists from Trans Union and/or the other CRAs concerning Plaintiff and the Class.

21. Under the FCRA, such prescreened lists constitute consumer reports.

22. At the time Defendant requested and obtained Plaintiff's consumer report, and the consumer reports of the Class, Plaintiff, and the Class: (a) had not applied for credit with Defendant nor initiated any credit or business transaction involving Defendant; (b) had not applied for employment with Defendant; (c) had not applied for insurance with Defendant; (d) had not authorized Defendant to request and obtain their consumer reports for any reason; (e) did not have any open and/or closed accounts with Defendant.

23. Prior to the First Lawsuit, Plaintiff received several letters from Defendant that purported to be firm offers of credit but, upon information and belief, were not because Defendant did not intend to honor the purported false and illusory offer in the letters. In fact, one or more of the letters even expressly stated that Defendant "does not broker loans and does not make and/or fund any product

offerings, loans, or credit decisions." Plaintiff did not receive any such letters – or any letters at all – from Defendant in relation to the pulls of his consumer reports as reflected in Exhibit A.

24. Upon information and belief, Defendant intended to pull Plaintiff's consumer reports, and those of the Class, as a means to market debt relief services to Plaintiff and the other members of the proposed class.

25. At least one other court has considered Defendant's conduct and held that the plaintiff in that case properly alleged a scheme by Defendant and others to obtain consumer reports without a permissible purpose. See *Stechenfinger v. Silverlake Financial, et al.*, 2024 WL 4266598 (S.D. Ohio Sept. 23, 2024) (so finding).

26. The Better Business Bureau website[1] cites numerous other consumers lodging similar complaints about Defendant and its "bait-and-switch" practices to lure consumers into debt relief marketing efforts via its false and illusory "offers" of credit, including:

---

[1] *See* https://www.bbb.org/us/ca/newport-beach/profile/financial-services/silverlake-financial-1126-1000060038/complaints (last accessed Dec. 30, 2024).







CLASS ACTION COMPLAINT

> **Initial Complaint**
> 04/30/2024
>
> **Complaint Type:** Product Issues
> **Status:** Answered
>
> Received several pieces of mail stating that I have been qualified for a personal loan to consolidate/resolve debt with high interest credit cards. Upon completion of the application and receiving a "congratulations you are pre-approved" notification, I received a call from a representative who also stated I was pre-approved and that it needed to go to underwriting for final approval and he would call me back later today and inform me on the "loan package". However, when ****** called me back, he informed me that the loan was off the table and that they would provide me an opportunity to enroll in the fresh start program, which is a debt restructuring wherein the company negotiates a reduced settlement with the creditors and receive a fee for the settlement (collected from the payoff of the debts) settlements are often far less than the actual debt. Clearly a different product and service. And clearly a more profitable product/service for Silverlake than providing a straight up loan to which they are only collecting the interest. It is mind blowing to me that companies will continue to market this, over and over and then come back to someone trying their best to get out of an already negative situation and use that vulnerability to offer a totally different solution than what was advertised.

> **Initial Complaint**
> 12/06/2023
>
> **Complaint Type:** Service or Repair Issues
> **Status:** Resolved
>
> I received several letters saying that I was pre-approved for a debt consolidation loan that I desperately needed. After speaking with an agent (*********************) he claimed that I was not approved, but that they had another program that I was approved to enroll. I was required to enter into a debt settlement program with *********************. This required me to stop making payments on my debt so that they could negotiate a payoff amount. I was VERY skeptical of this, but I was told on more than one occasion that if I made the debt settlement payment on time for 6 months that I would be eligible for a Fresh Start Loan that would pay off all of my debt and I would have one monthly payment and start repairing my credit. I have made every payment on time for the past 6 months and now that I should be eligible I cannot get a hold of ********************** or anyone at Silverlake. My credit is absolutely destroyed and I am in a WAY worse situation. This is an absolute scam and I am beyond upset that I trusted and believed in him when he only used my fear and desperation against me. I don't even think this "Fresh Start Loan Program" exists, they just use that as bait to get desperate people enrolled in these debt settlement programs. I am beyond furious that I fell for this scam and that I now am in a terrible financial situation. I have tried email, phone and text with absolutely no response.

27. Upon information and belief, Defendant represented to Trans Union and/or the other CRAs that Defendant had a permissible purpose under Section 1681b(a) of the FCRA to request and obtain Plaintiff's consumer reports reflected in Exhibit A, and the consumer reports of the Class.

28. Defendant violated the FCRA by requesting and obtaining Plaintiff's consumer reports as reflected in Exhibit A, and the consumer reports of the Class, without a permissible purpose under the FCRA.

29. As a result of Defendant's violations of the FCRA, Plaintiff was required to retain legal counsel to assist him.

## CLASS ALLEGATIONS

30. Plaintiff brings this action, individually and on behalf of all similarly situated individuals, as members of the following class:

> All consumers within the United States for whom Defendant requested and obtained a consumer report on such consumer within the two years prior to the filing of the Complaint through the conclusion of this case. The class does not include any claims by Plaintiff in the First Lawsuit and such claims are excluded. Plaintiff's claims only relate to Defendant's pulls of his credit report as reflected on Exhibit A.

31. Specifically excluded from the Class are the following: (1) Defendant and any entity in which either has a controlling interest, and the officers, directors, employees, affiliates, legal representative, heirs, successors, subsidiaries, and/or assigns of any such individual or entity; and (2) any judge or judicial officer with responsibility over the management or resolution of this litigation and members of any such individual's immediate family.

32. The Plaintiff is a member of this Class.

33. Upon information and belief, the members of the Class are so numerous that joinder is impracticable.

34. Based upon information and belief, and the allegations above about Defendant's use or sale of consumer reports for marketing campaigns, numerous consumers have been victims of Defendants' scheme.

35. Common (identical) questions of law and fact predominate over any questions solely affecting individual Class members. Among such common questions of law and fact are the following:

    A. Whether Defendant has systematically engaged in the long-term illegal practice of accessing and/or misusing consumer credit reports without a permissible purpose under the FCRA.

    B. Whether Defendant knowingly and/or negligently accessed the Class members' consumer credit reports without a permissible purpose under the FCRA.

    C. Whether Defendant knowingly and/or negligently resold the Class members' consumer reports to third parties that lacked a permissible purpose for them under the FCRA.

36. Plaintiff's individual claims are typical of the respective Class members' claims because the claims all share the same legal basis for recovery, the same predicate facts to liability, and the same basic relief sought. The Class claims are, in fact, identical.

37. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has no interest antagonistic to those of other Class members, and Plaintiff has retained attorneys experienced as counsel in class actions, consumer protection, and complex litigation. These attorneys will vigorously prosecute the class claims.

38. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy for at least the following reasons, among others:

    A. Given the small size of individual Class members' claims (between $100 and $1000 in statutory damages) and the expense of litigating those claims (the cost of filing individual suit would likely exceed $100), few, if any, Class members could afford to, or would seek, legal redress individually for the wrongs Defendant has committed against them, and absent class members have no substantial interest in controlling the prosecution of individual actions. No such individual actions in California are known to be pending as of the date of filing this Complaint.

    B. When the liability of Defendant has been adjudicated, claims of all Class members can be administered efficiently and/or determined by the Court. This conclusion follows from, among other facts, the fact that all

class members assert identical claims under the FCRA and seek identical relief. Moreover, the Class consists of a definite group of consumers over a finite period of time, making the efficient administration of claims post-certification and/or trial.

  C. Based on these same facts, among others, the Class action will promote an orderly and expeditious administration and adjudication of this dispute. This class action will foster economies of time, effort, and resources. This class action will ensure uniformity of decisions. It is therefore desirable to concentrate the claims as a class action in this forum. Otherwise, numerous consumers whom Defendant mistreated under the FCRA will go without legal remedy.

  D. Without this class action, the Class members will continue to suffer harm, and Defendant's unlawful conduct will be unaccounted for while Defendant continues to reap benefits of its unlawful activity.

39. No difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action.

40. Indeed, those harmed by Defendant can be readily identified through business records, including the very prescreened consumer lists and/or consumer reports at issue.

41. Similarly, the proposed Class is objectively ascertainable by definite time, limited geography, and specific reference to records maintained by Defendant and the CRAs.

42. Notice and claims administration can therefore be managed efficiently and accurately.

43. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and/or (ii) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

44. Notice can be provided to members of the Class by regular U.S. Mail, among other means that satisfy due process and practical concerns.

## COUNT ONE:

### Defendant's Willful Violations of the FCRA

45. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth herein.

46. Defendant willfully violated the FCRA by knowingly, or recklessly, requesting and obtaining Plaintiff's consumer report, and those of the Class, without a permissible purpose set forth in Section 1681b of the FCRA. This is particularly true given Defendant's notice from the First Lawsuit.

47. As a result of Defendant's willful violations of the FCRA, Plaintiff, and the Class, have been damaged as set forth above including invasion of their privacy.

48. Pursuant to 15 U.S.C. § 1681n, Defendant is liable to Plaintiff and the Class for damages as set forth above and, in an amount, to be determined by the jury.

49. Pursuant to 15 U.S.C. § 1681n, Defendant is liable to Plaintiff and the Class for statutory and punitive damages as a result of its willful violations of the FCRA.

50. Pursuant to 15 U.S.C. § 1681n, Defendant is liable to Plaintiff and the Class for his reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff requests that this Court:

    a. Appoint Plaintiff's counsel as counsel for the Class;

    b. Appoint Plaintiff as representative for the Class;

    c. Certify the Class;

d.  Enter judgment in favor of Plaintiff and the Class for statutory damages, punitive damages, attorney's fees and costs; and,

e.  Award such other relief to Plaintiff and the Class as the Court may deem just and proper.

**TRIAL BY JURY IS DEMANDED.**

Dated: January 21, 2026.

                Respectfully submitted,

                By: **/s/ Todd M. Friedman**
                Todd M. Friedman
                **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

# EXHIBIT A

## Regular Inquiries

## Promotional Inquiries

**SILVERLAKE FINANCIAL LLC** ( 930 W 17TH STREET, UNIT D, SANTA ANA, CA 92706, (714) 390-1995 )
Requested On: 11/18/2025, 10/27/2025,

To dispute online go to: http://transunion.com/disputeonline